# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TY AIR, INC., | : |
| | : Civil Action No: 2:25-cv-00985 |
| Plaintiff, | : |
| | : Judge: |
| v. | : |
| | : |
| COMLUX AMERICA, LLC | : |
| | : |
| Defendant. | : |

## COMPLAINT

Plaintiff Ty Air, Inc. ("Ty Air"), by and through its counsel, sets forth the following as its Complaint against Defendant Comlux America, LLC ("Comlux") and alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract action related to Comlux's failure to honor the terms of two agreements between Ty Air and Comlux for work on Ty Air's Boeing Business Jet ("BBJ"). Comlux also fraudulently induced Ty Air to enter into the agreements, breached multiple express and implied warranties in connection with the work, and has been unjustly enriched. As a result, Ty Air has suffered millions of dollars in damages, including but not limited to: sums paid to Comlux for work that Comlux failed to complete per the parties' agreements; sums that have been paid or must be paid to third parties to complete work that Comlux failed to complete or to deliver what Comlux promised but failed to deliver (though some sound suppression deliverables promised by Comlux have never been achieved); and sums that have been paid or will be paid to third parties to repair damages to the BBJ caused by Comlux.

2. Comlux falsely represented that its work on the BBJ would be completed by industry-leading experts, which would enable Comlux to achieve numerous agreed-upon

1

benchmarks with respect to the technology, comfort, appearance, and cabin noise levels of the BBJ.

3. Despite Comlux's representations that it was the "industry leader" in each of the disciplines implicated in the bargained for maintenance, repair, and upgrade of the BBJ, Ty Air discovered that Comlux failed to accomplish nearly all of the agreed-upon objectives.

4. Contrary to Comlux's assertions, representations, and promises, Comlux's incompetence and inadequate quality control required Ty Air to engage another vendor to remediate Comlux's substandard work on the BBJ and to deliver what Comlux failed to deliver.

5. Ty Air brings this action to recover the millions of dollars it paid to Comlux for work that Comlux either did not complete or failed to complete in a professional manner and the millions of dollars in additional funds Ty Air was forced to pay another vendor to complete the agreed-upon tasks and/or correct Comlux's substandard workmanship.

**PARTIES**

6. Plaintiff Ty Air is a Delaware corporation with its headquarters in Westmont, Illinois.

7. Comlux is a limited liability company whose members are Daron Dryer, James Soleo, David Edinger, Ettore Rodaro, Tom Searl, Jerry Crone, and Gustavo Rodriguez. Upon information and belief, Daron Dryer, Tom Searl, Jerry Crone, and Gustavo Rodriguez are citizens of the State of Indiana. Also upon information and belief, James Soleo is a citizen of the State of Florida, David Edinger is a citizen of the State of Texas, and Ettore Rodaro is a citizen of Switzerland.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship, as Plaintiff Ty Air is a citizen of the states of Delaware and Illinois and Defendant Comlux is a citizen of Indiana, Florida, Texas, and Switzerland, and the matter in controversy exceeds, exclusive of interest and costs, the amount of $75,000.

9. This Court has personal jurisdiction over Comlux, because Comlux purposely directed its activities at Pennsylvania and Ty Air's claims arise out of Comlux's contacts with the forum. Comlux regularly interacted with Ty Air's agents in Latrobe Pennsylvania where the BBJ that is the subject of this action has been based and stored. For the past 12 years, Ty Air's agent, LJ Aviation ("LJ"), has stored, maintained, and managed the operations of the BBJ at LJ's hangar, located at Arnold Palmer Regional Airport in Latrobe, Pennsylvania. Comlux and its agents traveled to Latrobe on several occasions to solicit Ty Air's business and inspect the BBJ. Comlux also directed a Proposal for the BBJ, dated on or about January 10, 2020, to LJ in Latrobe, Pennsylvania. In addition, Comlux again traveled to Latrobe in 2023 in an attempt to remediate its deficient work on the BBJ. Further, Ty Air's fraudulent inducement claim against Comlux arises out of and is related to Comlux's contacts with the forum, showing that it purposely availed itself of contacts with the forum. As a result, Comlux's activities have established sufficient contacts within this Court's jurisdiction such that the exercise of jurisdiction would comport with fair play and substantial justice.

10. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(2) in that a substantial number of the events giving

rise to the claims occurred in this district and the BBJ that is the subject of the action, key witnesses, and evidence are all located in this district.

## BACKGROUND FACTS

11. Ty Air owns a BBJ that is used for business travel.

12. The BBJ offers longer range and more space and amenities than typical private jets.

13. The BBJ also offers state-of-the-art technology and features that many smaller jets cannot accommodate.

14. Ty Air's BBJ was manufactured in or about 2000 and purchased by Ty Air in or about 2003.

15. Ty Air entrusted LJ with ensuring that the BBJ is kept in pristine condition and that all regular maintenance items are addressed according to a strict maintenance schedule.

### A. Comlux Solicits Ty Air's Business

16. Along with other vendors in the aviation maintenance and upgrade business, Comlux would regularly send representatives to LJ's facilities in Latrobe to discuss their capabilities, expertise, and desire to work on the Ty Air BBJ.

17. In approximately 2018, Ty Air decided to upgrade the BBJ's cabin management system, lighting, and sound suppression systems, among other things, and to engage a vendor to perform maintenance on the BBJ.

18. Ty Air asked LJ to identify vendors with sufficient capabilities and expertise to complete the desired upgrades and maintenance.

19. As part of its due diligence, LJ met with a Comlux sales representative, Cory Kolman, who came to LJ's facilities to tout Comlux's supposed expertise and qualifications as a world-class provider of sound suppression systems for the BBJ as well as its purported exceptional

capabilities to provide the upgrades and maintenance desired by Ty Air. Comlux represented that its work would be workmanlike, would meet all applicable commercial standards, and would have a high quality fit and finish to its components.

### B. Comlux Represents That It Is Uniquely Qualified To Complete The Work Sought By Ty Air On The BBJ.

20. Throughout the initial discussions and later negotiations, Ty Air and LJ were consistently reassured by Comlux that Comlux had the knowledge, personnel, and expertise to successfully complete the maintenance, cabin management, lighting, sound suppression, and other upgrades that Ty Air sought for the BBJ.

21. In addition to the in-person discussions in Latrobe, Comlux and LJ communicated by phone and through e-mail for more than a year regarding Comlux's plans and capabilities to meet Ty Air's objectives for the BBJ.

22. During these discussions, Comlux's CEO, Daren Dryer, claimed to be the number one expert in the world with respect to cabin sound suppression systems in BBJs and assured LJ and Ty Air that Comlux could reduce the cabin sound levels in the Ty Air BBJ to approximately 40 decibels and possibly even below 40 decibels.

23. While Ty Air considered other vendors – all of which submitted less expensive proposals – Ty Air relied on Comlux's repeated assurances of its preeminence in cabin sound suppression solutions and its ability to professionally achieve Ty Air's other stated objectives when it chose to engage Comlux on the BBJ project.

### C. Comlux And Ty Air Enter Into Contracts For The Work On The BBJ.

24. In or about February of 2020, Ty Air and Comlux reached an agreement under which Ty Air would pay Comlux approximately $991,400 for a series of essential maintenance

5

services (this agreement including any amendments or modifications agreed to by the parties is designated as the "Maintenance Agreement").

25.     In or about February of 2020, Ty Air and Comlux also reached a second agreement under which Ty Air would pay Comlux approximately $5,461,869 for goods and services necessary to perform a major upgrade to the BBJ's cabin, including but not limited to cabin management, lighting, sound suppression systems (this agreement including any amendments or modifications agreed to by the parties is designated as the "Cabin Upgrade Agreement").

**D.     Comlux Makes Little Progress On The BBJ Over More Than Three Years.**

26.     LJ arranged to deliver the BBJ from its base of operations in Latrobe to Comlux's facilities in Indianapolis, Indiana to facilitate the work called for in the Maintenance Agreement and Cabin Upgrade Agreement.

27.     While Comlux initially provided regular updates on its progress, it eventually became apparent to LJ and Ty Air that progress on the maintenance and upgrade projects had come to a near complete halt.

28.     Initially, Ty Air understood that some of Comlux's difficulties were due to the COVID-19 pandemic, but Comlux continued to struggle to complete the agreed-upon work, even as government restrictions were eased and logistical difficulties were diminishing in 2021.

29.     In November 2021, LJ officials made a site visit to Comlux's facilities to try to expedite Comlux's progress on the BBJ.

30.     During its visit, LJ's officials observed that while the entire interior of the aircraft was disassembled, it was otherwise unclear what work Comlux had completed on the BBJ.

31.     In almost daily communications with LJ, Comlux continued to blame its lack of progress on the effects of COVID-19 on its workforce and Comlux's purported difficulties in acquiring necessary parts and components.

32.     The ongoing delays prompted LJ to make another site visit to Comlux in August of 2022, during which LJ observed a continued lack of progress on the work called for in the Maintenance Agreement and Cabin Upgrade Agreement.

E.     **Comlux Halts Work On The BBJ.**

33.     In or around early 2023, it became increasingly clear to LJ that Comlux lacked the expertise and resources necessary to fully accomplish the agreed-upon work on the BBJ.

34.     Comlux's shoddy workmanship and inability to perform the agreed-upon tasks became so problematic that Comlux and LJ were forced to contract with a third-party specialist to advise and assist Comlux with the work called for in the Maintenance Agreement and the Cabin Upgrade Agreement.

35.     Ultimately, Comlux itself recognized that it would be unable to complete all of the work called for called for in the Maintenance Agreement and the Cabin Upgrade Agreement and asked LJ and Ty Air to retrieve the BBJ.

36.     When LJ arrived at Comlux's facilities to inspect the aircraft in early 2023, LJ quickly became concerned with the airworthiness of the BBJ.  For example, many of the avionics systems were not working as intended.

37.     Comlux refused LJ's request that it remedy several of the most obvious deficiencies before LJ would retake possession of the BBJ.  As a result, LJ was forced to arrange to fly the aircraft back to its home base in Latrobe without Comlux making those repairs, after LJ determined that it was safe to do so.

38.   Once the BBJ landed in Latrobe, LJ inspected the aircraft and found numerous instances in which Comlux failed to properly perform the work called for in the Maintenance Agreement and the Cabin Upgrade Agreement.

39.   Although Comlux sent technicians to LJ's facilities in Latrobe to remediate some of the most-egregious issues with the BBJ identified by LJ, it was clear to LJ that Comlux's technicians lacked sufficient expertise required to resolve all but the most basic problems with Comlux's initial work.

40.   Comlux's technicians left Latrobe unable to resolve nearly all of the deficiencies on the BBJ caused by Comlux's careless workmanship.

**F.    Ty Air Is Forced To Hire Another Vendor To Remedy Comlux's Work.**

41.   Because the BBJ was not fit for service, LJ and Ty Air engaged a third-party, Citadel Completions, to inspect the BBJ and address the substandard work done by Comlux.

42.   Citadel soon discovered numerous flaws with Comlux's installation of the sound suppression technology and confirmed that Comlux's careless work in other areas rendered the BBJ unfit for normal operations.

43.   Comlux also failed to deliver on the fit, functionality, integration, and overall quality of the components and systems it was to install. This included but is not limited to a lighting system with obsolete technology and parts. The obsolete lighting system is now so outdated that it is incompatible with the new Cabin Management System (CMS) installed by Citadel to effectively remediate the quagmire of issues originating from Comlux's work. This failure was amplified by Comlux's delay. The new lighting system strongly recommended and proposed by Citadel to fully integrate with the replacement CMS is expected to cost Ty Air an additional $1.4 million to replace.

44. After months of remediating Comlux's sub-standard work, Citadel was finally able to undertake the work called for in the Maintenance Agreement and the Cabin Upgrade Agreement that Comlux promised but failed to deliver, though the sound suppression levels promised by Comlux have never been achieved.

### COUNT ONE
(Breach of Contract)

45. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

46. Ty Air entered into the Maintenance Agreement with Comlux.

47. The Maintenance Agreement obligated Comlux to perform the specified maintenance activities and to return the BBJ in working order so that it was flight-worthy and would meet all applicable FAA standards.

48. In exchange, Ty Air was obligated to pay for all work done by Comlux under the Maintenance Agreement.

49. Ty Air performed all of its obligations under the Maintenance Agreement.

50. Comlux was obligated to complete its work under the Maintenance Agreement in a workmanlike manner and in accordance with commercial standards.

51. Once it retrieved the aircraft, LJ and Ty Air discovered that Comlux had breached numerous obligations under the Maintenance Agreement by failing to properly complete the agreed upon maintenance and upgrades and by causing damage components of the aircraft.

52. Many of the systems scheduled to be addressed in the Maintenance Agreement failed to meet the agreed upon specifications and standards and/or were not in working order when LJ retook possession of the BBJ from Comlux.

53. Ty Air paid for technology, features, and work that Comlux never completed as agreed upon.

54. Comlux's actions and inactions breached the Maintenance Agreement.

55. Ty Air was forced to spend millions of dollars (in addition to the millions of dollars it had already paid Comlux) to remediate the issues caused by Comlux, complete the work called for in the Maintenance Agreement that was never performed, repair damage caused by Comlux, and assure that the BBJ was safe to operate.

56. As a result of Comlux's breaches of the Maintenance Agreement, Ty Air has been damaged in amount greater than $75,000.

## COUNT TWO
(Breach of Contract)

57. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

58. Ty Air entered into Cabin Upgrade Agreement with Comlux.

59. The Cabin Upgrade Agreement required Comlux to complete significant remodeling and upgrades to the interior of the BBJ including, but not limited to, cabin management systems, lighting systems, and sound suppression systems throughout the BBJ.

60. Ty Air performed all of its obligations under the Cabin Upgrade Agreement.

61. Comlux was obligated to complete its work under the Cabin Upgrade Agreement in a workmanlike manner and in accordance with commercial standards.

62. Once it retrieved the aircraft, LJ and Ty Air discovered that Comlux had breached numerous obligations under the Cabin Upgrade Agreement by failing to properly complete the agreed upon maintenance and upgrades.

63. Many of the systems scheduled to be addressed in the Cabin Upgrade Agreement failed to meet the agreed upon specifications and standards and/or were not in working order when LJ retook possession of the BBJ from Comlux.

64. Ty Air paid for technology, features, and work that Comlux never completed as agreed upon.

65. Comlux's actions and inactions breached the Cabin Upgrade Agreement.

66. Ty Air was forced to spend millions of dollars (in addition to the millions of dollars it had already paid Comlux) to remediate the issues caused by Comlux, complete the work called for in the Cabin Upgrade Agreement that was never performed, repair damage caused by Comlux, and assure that the BBJ was safe to operate.

67. As a result of Comlux's breaches of the Cabin Upgrade Agreement, Ty Air has been damaged in amount greater than $75,000.

## COUNT THREE
(Fraud in the Inducement)

68. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

69. Prior to the execution of the Maintenance Agreement and Cabin Upgrade Agreement, Comlux made multiple representations to Ty Air and LJ that Comlux had the requisite knowledge, experience, personnel, and expertise necessary to complete the work sought by Ty Air and LJ.

70. Comlux also represented to LJ and Ty Air that it would use its expertise in sound suppression technology to reduce the cabin noise levels in the BBJ to approximately 40 decibels, and possibly below 40 decibels.

71. These representations were material to Ty Air's decisions to enter into the Maintenance Agreement and Cabin Upgrade Agreement with Comlux. A key factor in Ty Air's engagement of Comlux was Comlux's representations that it could achieve the sound suppression objectives.

72. Comlux knew or had reckless ignorance of the falsity of its representations when it assured Ty Air that Comlux had the requisite knowledge, experience, personnel, and expertise necessary to achieve the benchmarks sought by Ty Air and LJ for the BBJ.

73. Comlux intentionally misled LJ and Ty Air into believing Comlux had the requisite knowledge, experience, personnel, and expertise necessary to achieve the benchmarks sought by Ty Air and LJ for the BBJ.

74. Comlux's misrepresentations caused Ty Air to justifiably rely on Comlux's misrepresentations to Ty Air's detriment.

75. Ty Air's reliance on Comlux's misrepresentations proximately caused Ty Air to make millions of dollars in payments to Comlux for work that Comlux misrepresented it could complete in accordance with agreed benchmarks, when in fact it was never able to do so.

76. Comlux's conduct in this regard was reckless, wanton, malicious, and willful, justifying an award of punitive damages.

77. As a result of Comlux's fraudulent inducement, Ty Air has been damaged in an amount greater than $75,000.

## COUNT FOUR
(Breach of Express Warranty)

78. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

79. Both the Maintenance Agreement and the Cabin Upgrade Agreement contained express warranty provisions.

80. When LJ retook possession of the BBJ, it discovered numerous flaws in Comlux's work and in the equipment that Comlux installed in the BBJ, as well as damage to aircraft components.

81. Comlux's work did not comply with applicable regulations and was not free from defects in workmanship and/or material.

82. Comlux refused to or was unable to address these noted flaws and damage, and thereby breached the express warranty provisions.

83. The breaches of these warranty provisions caused Ty Air to spend millions of dollars to remediate the issues caused by Comlux's breaches (in addition to the millions of dollars it already paid Comlux), including for remediation and repairs to non-conforming work and/or defective work and/or components.

84. As a direct and proximate result of Comlux's breaches, Ty Air has been damaged in an amount greater than $75,000.

## COUNT FIVE
(Breach of Implied Warranty – Fitness for a Particular Purpose)

85. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

86. Comlux knew that Ty Air sought the agreed-upon maintenance and system upgrades to the BBJ for its stated purposes.

87. Comlux knew that Ty Air was relying on its skills and judgment to deliver the upgrades and associated services for those purposes.

13

88. Ty Air relied on Comlux's representations that it could deliver the agreed-upon equipment and services and its assurances that those goods and services would be suitable for Ty Air's purposes.

89. Comlux breached this implied warranty by failing to provide equipment and services that met Ty Air's stated purposes.

90. As a direct and proximate result of Comlux's breaches, Ty Air has been damaged in an amount greater than $75,000.

## COUNT SIX
(Breach of Implied Warranty of Merchantability)

91. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

92. There is an implied warranty that goods shall be merchantable in all contracts.

93. Comlux represented to Ty Air that it was a seller in the types of goods and services necessary to maintain and upgrade the BBJ.

94. Comlux supplied Ty Air with goods and services that did not conform to the promises made by Comlux and basic commercial standards.

95. The goods and services Comlux provided to Ty Air were not fit for the purpose of maintaining and upgrading the BBJ.

96. As a direct and proximate result of Comlux's breach, Ty Air has been damaged in an amount greater than $75,000.

## COUNT SEVEN
(Breach of Implied Duty of Workmanship)

97. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

98. There was an implied duty for Comlux to work skillfully, carefully, safely, and in a workmanlike manner when performing the services called for in the Maintenance Agreement and the Cabin Upgrade Agreement.

99. As part of the consideration it provided, Ty Air paid Comlux to perform the work called for in the Maintenance Agreement and Cabin Upgrade Agreement in a skillful, careful, and workmanlike manner.

100. Comlux breached this duty to Ty Air when it failed to work skillfully, carefully, and in a workmanlike manner on the BBJ and in accordance with commercial standards.

101. As a direct and proximate result of Comlux's breaches, Ty Air was forced to spend millions of dollars (in addition to the millions of dollars it already paid Comlux) to remedy the shoddy workmanship and lack of quality control exhibited by Comlux on the BBJ as well as damages to the aircraft's components caused by Comlux

102. As a direct and proximate result of Comlux's breaches, Ty Air has been damaged in an amount greater than $75,000.

## COUNT EIGHT
(Unjust Enrichment)

103. Ty Air repeats and incorporates all of the allegations in the preceding paragraphs as though recited herein.

104. Ty Air paid millions of dollars to Comlux, conferring a benefit to Comlux that it accepted and has retained.

105. It is unequitable for Comlux to retain the sums it received from Ty Air when Comlux has failed to deliver any benefit to Ty Air. Indeed, Comlux's poor and incomplete work on the BBJ caused Ty Air to pay millions of additional dollars to others to repair and remediate the

disassembled state in which Comlux left the BBJ, complete work on the BBJ that Comlux never performed, repair damages caused by Comlux, and make the BBJ once again fit to use.

106. As a direct and proximate result of Comlux's conduct, Ty Air has been damaged and Comlux has been unjustly enriched, in an amount greater than $75,000.

**WHEREFORE,** Ty Air respectfully prays for the following relief:

1. Monetary damages in an amount to be proven at trial for Comlux's breaches of the Maintenance Agreement and Cabin Upgrade Agreement;
2. Monetary and punitive damages in an amount to be proven at trial for Comlux's fraudulent inducement of Ty Air;
3. Monetary damages in an amount to be proven at trial for Comlux's breach of the express warranties in the Maintenance Agreement and the Cabin Upgrade Agreement;
4. Monetary damages in an amount to be proven at trial for Comlux's breach of implied warranty of fitness of a particular purpose;
5. Monetary damages in an amount to be proven at trial for Comlux's breach of implied warranty of merchantability;
6. Monetary damages in an amount to be proven at trial for Comlux's breach of the implied warranty of workmanship;
7. Monetary damages in an amount to be proven at trial for Comlux's unjust enrichment;
8. Attorneys' fees and costs; and
9. Any other damages, exemplary damages, costs, and/or other relief the Court deems appropriate.

Respectfully submitted,

/s/ David M. Belczyk

John M. McIntyre (Pa. Bar ID# 78739)
David M. Belczyk (Pa. Bar ID# 204214)
Porter, Wright, Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500
(412) 235-4510 – Facsimile
dbelczyk@porterwright.com

26304400.3